# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Michael R. Hyman | New Mexico State University et al. |

| **(b)** County of Residence of First Listed Plaintiff   Dona Anna | County of Residence of First Listed Defendant   Dona Anna |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Grant Climaco Aguirre, 1016 W. Warner, Guthrie,OK 73044. 405-414-7054 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [x] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government Defendant
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | [ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[x] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | [ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | [ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | [ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| | | | **IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1   Original Proceeding
- [ ] 2   Removed from State Court
- [ ] 3   Remanded from Appellate Court
- [ ] 4   Reinstated or Reopened
- [ ] 5   Transferred from Another District *(specify)*
- [ ] 6   Multidistrict Litigation - Transfer
- [ ] 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC sec. 2000

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 27 June 2023 | s/Grant Climaco Aguirre |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| 1.    MICHAEL R. HYMAN ) | |
| ) | |
| ) | |
|           Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| 1. NEW MEXICO STATE UNIVERSITY ) | |
| ) | |
| 2. THE BOARD OF REGENTS OF ) | |
|     NEW MEXICO STATE UNIVERSITY ) | |
| ) | |
| 3. DAVID DANIEL, individually and in his ) | |
|     Official capacity as Head of the Marketing ) | |
|     Department at New Mexico State University ) | |
| ) | **ATTORNEY LIEN CLAIMED** |
| 4. DANIEL JAMES, individually and in his ) | |
|     official capacity as Associate Dean of the ) | |
|     College of Business ) | |
| ) | |
|           Defendants, ) | **JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

  **COMES NOW** the Plaintiff, Michael R. Hyman, Ph.D., and for his causes of action

against the Defendants herein alleges as follows:

## PARTIES

1. Plaintiff, Michael R. Hyman, Ph.D., is an adult male residing in Dona Anna County, State of New Mexico. Plaintiff is a protected class member as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et. seq. Specifically, Plaintiff is a male, which is covered as gender in the aforementioned Act. Furthermore, Plaintiff is Jewish, which the Act covers. Plaintiff is also a protected class member as defined by the Americans with Disability Act 42 U.S.C. § 12101 et seq. Specifically, Plaintiff has a significant physical disability and has been regarded and treated as a person with a disability by New Mexico State University (NMSU). Plaintiff is also a protected class member as defined by the Age Discrimination in Employment Act 29 U.S.C. § 634 et seq. Specifically, Plaintiff was born in 1954 and is currently 68 years of age.

2. Defendants are:

    a.  New Mexico State University (NMSU), an agency of the State of New Mexico;

    b.  NMSU's Board of Regents;

    c.  David Daniel, individually and in his capacity as Head of the Marketing Department at NMSU; and

    d.  Daniel James, individually and in his capacity as Associate Dean of NMSU's College of Business.

## JURISDICTION AND VENUE

3. Plaintiff's causes of action are based on (1) gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000 et. seq., and retaliation for seeking to ensure Plaintiff's rights under the law and the settlement agreement reached

between Plaintiff and Defendants in Hyman v. NMSU et al., 18-cv-1103-JB-KRS. Gender

discrimination is also prohibited by the Fourteenth Amendment to the United States Constitution

and is made actionable by 42 U.S.C. § 1983; (2) violations of Plaintiff's rights under the

American's with Disability Act 42 U.S.C. § 12101 et seq., and retaliation for seeking to ensure

Plaintiff's rights under the law and the settlement agreement reached between Plaintiff and

Defendants in Hyman v. NMSU et al., 18-cv-1103-JB-KRS; (3) the Age Discrimination in

Employment Act 29 U.S.C. § 634 et seq., and retaliation for seeking to ensure Plaintiff's rights

under the law and the settlement agreement reached between Plaintiff and Defendants in Hyman

v. NMSU et al., 18-cv-1103-JB-KRS; (4) retaliation for filing a complaint based on gender

discrimination; (5) retaliation for filing a complaint based on religious discrimination; (6)

tortious intentional infliction of emotional distress by Defendants David Daniel and Daniel

James in their individual capacity, as their actions are ultra vires and thus outside the scope of

their employment; (7) material breach of contract, including but not limited to: failure to pay all

amounts due, failure to provide Plaintiff with all benefits to which he is entitled, and failure to

follow the Defendants' policies as they apply to the settlement agreement, which is actionable

under NM State §§ 55-2-725 et seq. (2019); (8) infringement on Plaintiff's copyrights, which are

protected by the United States Constitution, Article I, Section 8, Clause 8 and 17 U.S.C. § 102 et

seq.; and (9) infringement on Plaintiff's duty to delete all confidential documents and

communications, contrary to Defendants' policy, saved to the hard and solid-state drives of

personal computers returned per the settlement agreement.

    4. Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28

U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law

claims as they arise out of the same core operative facts as the federal claims, and jurisdiction

over them is vested in this Court under 28 U.S.C. §1367(a).

5. All of the actions complained of herein occurred in Dona Ana County, New Mexico and the Defendants may be served in New Mexico. Dona Ana County is located within the District of New Mexico; wherefore, the venue is proper in this Court under 28 U.S.C. 1391 (b).

6. Plaintiff timely filed a Charge of Discrimination with the EEOC on or about 11 July 2018. Plaintiff subsequently received a right-to-sue letter from the EEOC on or about 5 May 2021. The original lawsuit was timely filed within ninety (90) days of Plaintiff receiving that right-to-sue letter. Plaintiff filed additional charges of discrimination with the EEOC relating to discrimination based on disability and discrimination based on religion. The EEOC issued right-to-sue letters in these matters and transmitted those letters to Plaintiff and Plaintiff's counsel via email on 25 May 2021. These additional charges were timely filed within ninety (90) days of Plaintiff's receiving those letters. The issues in this case arise from the Defendants' continuing, pervasive, hostile, and retaliatory behavior despite the settlement agreement. These discriminatory actions have been extensively reviewed by the Commission, the Defendants, and this Court since the beginning of the previous and now current litigation.

7. While this case is pending and litigated, Plaintiff requests a temporary injunction to maintain his current status as a full-time faculty member (Distinguished Achievement Professor) on a sabbatical, with all the rights and privileges of that position including, but not limited to, his full salary, health/dental insurance, and retirement benefits. This relief is reasonable, as the Defendants' actions have created a situation entirely within the Defendants' control. Defendants' actions have burdened Plaintiff in many ways, including but not limited to forcing Plaintiff (i) to review all intellectual property on the computers NMSU and Daniel James have demanded Plaintiff return, and (ii) to alert numerous coauthors at other universities, as well as the scholarly

journals and professional organizations (e.g., American Marketing Association, Society for Marketing Advances) to which Plaintiff previously assigned manuscript copyright, about the intellectual property problem NMSU is creating. Because he has coauthored roughly 130 scholarly articles, 60 conference manuscripts, and four books, alerting relevant parties about this problem will burden Plaintiff unduly.

## **STATEMENT OF FACTS**

8 Plaintiff is an adult male.

9. Plaintiff began working for NMSU on or about August 1993.

10. On or about May 2014, NMSU hired James Hoffman as Dean of the College of Business.

11. On or about July 2015, James Hoffman hired Nancy Oretskin as Head of the Department of Marketing in NMSU's College of Business. Oretskin was Plaintiff's immediate supervisor.

12. On or about January 2019, James Hoffman hired David Daniel as Head of the Marketing Department in NMSU's College of Business. Daniel is Plaintiff's immediate supervisor.

13. Commencing on or about September 2015, Plaintiff was subject to gender/sexual harassment, harassment based on age, harassment based on disability, harassment based on religion, and retaliation for filing complaints about this harassment and retaliation. The harassment and retaliation were pervasive, hostile, adverse, and ongoing, as detailed below.

## COUNT I – Breach of Contract

14. For his first cause of action, Plaintiff incorporates all of the above statements and allegations and further alleges and states as follows:

15. NMSU and its agents, including but not limited to David Daniel and Daniel James, have continued to withhold payment due to Plaintiff under the settlement agreement. Daniel and James have insisted repeatedly that Plaintiff's receipt of that payment requires their approval and meeting conditions not specified in that agreement.

16. Furthermore, NMSU, Daniel, and James repeatedly denied Plaintiff other benefits to which he is entitled, such as recognitions accorded to similarly situated faculty, despite their requirement by the settlement agreement. Daniel has further breached the agreement by engaging in a series of defamatory communications with academic journal editors and other members of the marketing academic community including but not limited to the editors of the Journal of Business Ethics (Michelle Greenwood and Gazi Islam), all of the current members of the New Mexico State University Department of Marketing Faculty members, and many others in the College of Business and the Business Academic Community. This list of people that Daneil has egaged in his smear campaign is illustrative and non exhaustive.

## COUNT II – Discrimination Based on Gender

17. For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

18. This count is brought against NMSU and NMSU's Board of Regents.

19. Plaintiff is a male and a member of a protected class (gender) under Title VII of the Civil Rights Act of 1964 as amended and covered by similar state law protections.

a. While Ph.D. Coordinator of the Marketing Department, Plaintiff was not informed, let alone invited, to official meetings between students and Nancy Oretskin. Plaintiff only learned of those meetings from Ph.D. students.

b. Oretskin required Plaintiff to hold physical office hours for an online course he taught during his intermittent FMLA leave in Spring 2017. Oretskin threatened to deny Plaintiff's FMLA leave, despite his substantial need to eliminate all synchronous aspects of his assignment, unless Plaintiff held those physical office hours. Furthermore, Oretskin denied Plaintiff's request that a Ph.D. student whose dissertation committee he was chairing, who had worked with him previously on this online course, and who was his teaching assistant during Spring 2017, be allowed to hold Plaintiff's physical office hours in his place. Oretskin also threatened this student with non-graduation if Plaintiff remained this student's advisor and mentor, hence threatening this student's and Plaintiff's joint future research program. In contrast, a female Ph.D. student was allowed to hold virtual office hours from Europe while teaching online in the Summer of 2017.

c. Oretskin refused to correct errors in Plaintiff's annual performance evaluation for 2016 and refused to consider any contrary documentary evidence. Oretskin's rationale: "We each have our own worldview, and we are never going to agree" [paraphrase].

d. Oretskin encouraged a meritless complaint against Plaintiff by a female Ph.D. student. Plaintiff was informed of this behavior by a now-former colleague (Bruce Huhmann), who learned about it from a Ph.D. student who overheard a

conversation between Oretskin and this female Ph.D. student. At best, Oretskin carelessly compromised Plaintiff's privacy rights. At worst, Oretskin participated in an intentional effort to discredit Plaintiff with other department members and Ph.D. students.

e.   Although NMSU's Office of Institutional Equity had yet to conclude its investigation of this meritless complaint, Oretskin included that complaint in Plaintiff's annual performance review. When Plaintiff reminded Oretskin during his annual performance review conference that she was presuming guilt, Oretskin—a practicing attorney—told Plaintiff, "This is not a court of law."

f.   Oretskin never consulted Plaintiff about his Ph.D. students' teaching and research assignments, yet she consulted with female faculty members about their Ph.D. students' teaching and research assignments.

g.   Oretskin dismissed Plaintiff as Ph.D. Program Coordinator for the Department of Marketing in early Spring 2016, yet asked Plaintiff to continue performing tasks required of such coordinators for the remainder of 2016; for example, the annual Ph.D. Program Assessment Report, which was due in October 2016. When Plaintiff could not complete that task due to a family illness, Oretskin held that failure against Plaintiff in his annual performance review.

h.   Since Plaintiff reached an agreement settling his case against NMSU and other Defendants, NMSU, by and through its agents, has continued to harass Plaintiff in retaliation for his seeking to enforce his rights under that agreement. David Daniel and Daniel James have repeatedly insisted that

Plaintiff perform tasks, such as but not limited to (i) engaging in yearly online training, and (ii) returning materials that are copyright protected and not owned by NMSU, but James insists are owned by NMSU. This behavior has severely burdened Plaintiff and caused him reputational damage among his academic peers.

20. As a direct and proximate result of Defendants' actions, Plaintiff has suffered lost past, current, and future income; severe emotional distress; and other non-pecuniary losses. Because Defendants' actions were willful, wanton, or, at the least in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages to the extent available.

21. Plaintiff requests this Court enter judgment in favor of Plaintiff and against Defendants and assess compensatory damages including but not limited to back pay, future wages, and other compensatory damages together with pre- and post-judgment interest, costs, attorneys' fees, liquidated damages, punitive damages, and such other relief as this Court may deem equitable and appropriate or allowed by law.

## COUNT III – Age Discrimination

22. For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

23. This count is brought against NMSU, NMSU's Board of Regents, David Daniel individually and in his official capacity as Head of the Marketing Department at NMSU, and Daniel James individually and in his official capacity as an Associate Dean of NMSU's College of Business.

a. Since 2015, senior faculty members, especially in NMSU's College of Business at NMSU, have been resigning/retiring at far greater than the

historical rate. These faculty members were driven off by an administration focused on reducing faculty overhead by pressuring higher-salaried senior faculty members to resign/retire. As a Distinguished Achievement Professor in a college with generally higher salaried faculty members, Plaintiff has been one of the highest-paid faculty members at NMSU. Through their actions, discussed elsewhere in this document, and since the settlement of the previous case, NMSU, by and through its agents, has continued to discriminate against Plaintiff and has continued a pattern of retaliation against Plaintiff for his successful settlement of claims. Daniel and James have pressured Plaintiff to forego all the rights and benefits NMSU and prior Defendants negotiated as part of the settlement agreement. This ongoing behavior has been pervasive and hostile.

24. Plaintiff requests this Court enter judgment in favor of Plaintiff and against Defendants and assess compensatory damages including but not limited to back pay, future wages, and other compensatory damages together with pre- and post-judgment interest, costs, attorneys' fees, liquidated damages, punitive damages, and such other relief as this Court may deem equitable and appropriate or allowed by law.

**<u>COUNT IV – Violations of Plaintiff's Rights under the A.D.A.</u>**

25. For his fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

26. This Count goes against NMSU, NMSU's Board of Regents, and David Daniel individually and in their official capacities at NMSU.

a.  David Daniel has been aware since August 2015 that Plaintiff suffers from

physical issues that warranted an EEO accommodation issued by NMSU's Office of Institutional Equity (OIE) in Fall 2012. Plaintiff never invoked that accommodation because his then-supervisor, Elise (Pookie) Sautter, told him that invocation would eliminate his ability to work with students enrolled in the Department of Marketing's Ph.D. program. To allow Plaintiff to serve his department in the most useful capacity, previous administrators (Gerald Hampton, Elise Sautter, Pat Gavin, and Nancy Oretskin) informally accommodated Plaintiff by minimizing his synchronous assignments (e.g., teaching in-person courses).

In contrast, former Dean Hoffman and Daniel repeatedly attempted to increase Plaintiff's synchronous assignments. For example, Hoffman twice assigned Plaintiff to university-level committees without first consulting with Plaintiff. Plaintiff declined one such assignment in October 2018. Plaintiff explained to Hoffman that Plaintiff was serving as an associate editor for two journals, a co-editor for four in-progress special issues for major journals, a member of at least a half-dozen editorial review boards, and a frequent coauthor with many current and former Ph.D. students. Plaintiff also reminded Hoffman that Plaintiff had earned the maximum annual review score for 'service' for many consecutive years. Nonetheless, Hoffman retaliated against Plaintiff for refusing this assignment by changing Plaintiff's scheduled online course to an in-person course just before the registration period began. Plaintiff is the only member of his department whose teaching assignment for Spring 2019 was modified this way. This reassignment aggravated Plaintiff's

documented disabilities, including but not limited to profound allergies, extended fatigue, and gastrointestinal difficulties. (Note: Plaintiff has been excused from jury duty several times due to these disabilities.) Defendants are well aware of Plaintiff's disability and have accommodated it previously.

b. Consistent with a more asynchronous work schedule, Plaintiff served as editor of *NMSU Business Outlook* (a monthly online magazine sponsored by the College of Business) and as Ph.D. Program Coordinator (whose work could be scheduled around Plaintiff's disability). During the few months after Plaintiff informed Hoffman about Plaintiff's disability, Hoffman discontinued *NMSU Business Outlook* (for various contradictory and unsupported reasons) and insisted on Plaintiff's replacement as Ph.D. Program Coordinator. In essence, Hoffman knowingly eliminated Plaintiff's asynchronous assignments, which Plaintiff undertook as part of his prior informal accommodation by former NMSU College of Business administrators.

c. Laura Castille and David Daniel repeatedly denied Plaintiff an A.D.A. accommodation consistent with the recommendations of Plaintiff's physicians. Castille repeatedly justified a failed accommodation issued in December 2019 by misinterpreting documentation submitted by Plaintiff's physicians. For the Spring 2020 semester, Daniel insisted on an A.D.A. accommodation for Plaintiff contrary to the recommendations made by Plaintiff's physician. When that accommodation failed—causing Plaintiff to miss several classes—Daniel blamed Plaintiff for those absences (e.g., featured them in Plaintiff's annual performance evaluation).

On or around 17 March 2021, Plaintiff submitted new documentation from a physician noting the previously failed accommodation and requesting one that would effectively minimize exposure to airborne allergens. As of 28 July 2021, Castille had not provided Plaintiff a workable A.D.A. accommodation for the Fall 2021 semester. It should not take four months to fix an already issued A.D.A. accommodation. (In a 21 July 2021 video meeting, Castille explained her delay by telling Plaintiff he is "not a priority" for her.) Furthermore, Castille and Daniel insist on treating Plaintiff equally to his faculty colleagues rather than equitably, contrary to A.D.A. requirements. In retaliating against Plaintiff by withholding a workable A.D.A. accommodation that does not unduly burden NMSU students and employees, Castille and Daniel continue to violate NMSU's internal conflict-of-interest policy, as both know Plaintiff named them in multiple EEOC complaints and a previous lawsuit.

Plaintiff ultimately received an A.D.A. accommodation from NMSU's OIE for the 2021-2022 academic year. However, Daniel tried to negate it by writing an addendum that essentially voided it. Plaintiff successfully declined the addendum.

Castille, who was NMSU's Executive Director of the Office of Institutional Equality and Title IX Coordinator until October 2022, filed a lawsuit in the Third Judicial District Court on 7 February 2023. Castille accused NMSU's top leadership of gross mismanagement, abuse of authority, and violation of university policy. She claims NMSU violated her civil rights

under the state's Whistleblower Protection Act. Thus, NMSU administrators have repeatedly mistreated whistleblowing employees.

d.   Plaintiff tried to renew his A.D.A. accommodation for the 2022-2023 academic year. David Daniel emailed Plaintiff that his teaching schedule would not reflect an accommodation received "too close to a desired start date." Daniel and multiple upper NMSU administrators knew of Plaintiff's medical condition and accommodation needs. Daniel knew NMSU's OIE reviews and promulgates A.D.A. accommodations, thus being beyond his control.

For over a decade, Plaintiff received accommodations from a previous OIE evaluation and under previous deans and department heads (specifically, former Dean, Chancellor, President Garrey Carruthers, and former department heads Elise "Pookie" Sautter and Pat Gavin). That behavior alone and the government regulations indicate that persons previously treated as having a disability are entitled to accommodations. Thus, Daniel's insistence the Act or the regulations do not bind him is ludicrous.

27. Defendants David Daniel and Daniel James have continued this pattern of harassment despite the settlement agreement. Daniel and James insist that Plaintiff negotiates with them even though Plaintiff has repeatedly and unambiguously told them that communications with Daniel worsen Plaintiff's anxiety disorder and overall physical and mental health. In addition to Plaintiff and the Defendants, the following have knowledge of these issues: David Trafimow, Terry Adler, William Smith, Jeffrey Teich, David Boje, Benjamin Widner, Yu-Feng (Winnie) Lee, Bruce Huhmann, Kevin Shanahan, Alyssa Reynolds-Pearson, Wenkai Zhou, Alena Kostyk,

Brian Taillon, Susan Steiner, Luis Colato, and Michael Rupp.

28. Plaintiff requests this Court enter judgment in favor of Plaintiff and against Defendants and assess compensatory damages including but not limited to back pay, future wages, and other compensatory damages together with pre- and post-judgment interest, costs, attorneys' fees, liquidated damages, punitive damages, and such other relief as this Court may deem equitable and appropriate or allowed by law.

## **COUNT V – Discrimination Based on Religion**

29. For his fifth cause of action, Plaintiff incorporates all prior allegations and further states as follows:

30. This Count goes against NMSU, NMSU's Board of Regents, and David Daniel individually and in his capacity as an officer of NMSU.

31. Plaintiff previously requested reasonable accommodations to observe religious holidays. In the Fall of 2019 and 2020, David Daniel discriminated against Plaintiff twice based on religion.

      a.  In October 2019, Daniel refused to reschedule a faculty meeting scheduled for Yom Kippur (Day of Atonement; 8-9 October). Although Plaintiff provided more than two weeks' notice of the scheduling conflict, Daniel claimed that rescheduling the meeting would inconvenience another faculty member. Despite repeated emails from Plaintiff arguing it was unfair not to accommodate him based on the upcoming religious holiday, as required by NMSU policy, Daniel ignored Plaintiff's request.

      b.  In September 2020, during the Rosh Hashanah (Jewish New Year; 18-19 September) religious holiday, Daniel instructed Plaintiff via email—roughly

one hour before the holiday began—to immediately restructure two ongoing courses that Daniel had approved months earlier. Daniel insisted the demanded changes were not subject to debate. Despite the holiday, Plaintiff spent many hours that weekend revising his courses. Because Daniel might have forgotten the religious holiday, Plaintiff reminded him in an email confirming the demanded changes. Daniel never apologized for insisting on Plaintiff's working during the high holiday nor indicated he had forgotten it. This second incident shows a pattern of religious discrimination, ongoing harassment, and denied religious accommodations in retaliation for complaints Plaintiff filed against Daniel.

c. As chair of his department's Assistant Professor Search Committee in 2022, Plaintiff argued for sharing salary information with the job candidates (because NMSU faculty salaries are below the market rate). Daniel emailed Plaintiff that sharing this information with job candidates would be viewed as intentionally sabotaging the hiring process (i.e., insubordination), grounds for terminating Plaintiff's employment. Note that NMSU salary information and the historical underpaying of its faculty are publicly available, and Plaintiff is one of the most cited scholars in marketing ethics. Thus, this 'gag order' violates Plaintiff's First Amendment rights and his sincerely held ethical and religious beliefs.

32. Plaintiff requests this Court enter judgment in favor of Plaintiff and against Defendants and assess compensatory damages including but not limited to back pay, future wages, and other compensatory damages together with pre- and post-judgment interest, costs,

attorneys' fees, liquidated damages, punitive damages, and such other relief as this Court may deem equitable and appropriate or allowed by law.

### COUNT VI – Retaliation for Filing Complaints

33. For his sixth cause of action, Plaintiff incorporates all prior allegations and further states as follows:

34. This Count goes against NMSU, NMSU's Board of Regents, David Daniel individually and in his official capacity, and Daniel James individually and in his official capacity.

35. The following allegations from the prior lawsuit provide a background that continues to impact the retaliation that Plaintiff is experiencing at the Defendants' hands.

    a.  In Fall 2016, Plaintiff and another senior faculty member of NMSU's College of Business (David Boje) met with then-provost Dan Howard to discuss Hoffman's inability to administer the College of Business properly. That meeting was triggered by an earlier formal meeting with other faculty members (i.e., Plaintiff and his colleague represented their respective academic departments). Although Howard repeatedly indicated he would schedule follow-up meetings with Plaintiff, Howard never did so.

    b.  Subsequently, Plaintiff was subjected to a meritless EEO complaint. Laurie Millot, then-director of NMSU's OIE, investigated that complaint, failed to conduct a proper investigation, failed to treat Plaintiff fairly, failed to complete her investigation according to EEOC- and NMSU-mandated deadlines, and issued a finding contrary to objective evidence. NMSU's then-head legal counsel Liz Ellis and Howard refused to consider these issues,

instead insisting Plaintiff was only permitted to file a retaliation complaint against Millot. After agreeing to schedule a hearing regarding this matter, Howard canceled it. Howard then waited several months beyond Ellis' self-imposed deadline and just before his planned retirement to issue a ruling in support of Millot and contrary to evidence provided by Plaintiff.

In essence, (i) Hoffman retaliated against Plaintiff for representing a faculty preference for removing Hoffman as Dean of the College of Business, (ii) Howard retaliated against Plaintiff for filing a complaint against Hoffman and Millot, and (iii) Millot retaliated against Plaintiff for complaining Millot's lack of timeliness and improper investigation were contrary to NMSU and EEOC policy.

c.  Hoffman repeatedly slandered Plaintiff to senior faculty and administrators. As a result, Hoffman severely compromised Plaintiff's ability to work effectively with all faculty members in the College of Business and administrators throughout NMSU.

d.  Despite Plaintiff's department conducting an internal review of its Ph.D. Program and reporting Plaintiff had performed excellently as a Program Coordinator and an instructor, Plaintiff was removed from the coordinator position, in a retaliatory effort by Oretskin and Hoffman, after making it obvious Plaintiff would resist efforts to violate written Ph.D. Program policy unilaterally and to the students' detriment. For example, written Program policy at the time of admission indicated Ph.D. students would be required to teach six courses while on a four-year assistantship. NMSU College of

Business administrators unilaterally decided to increase that teaching requirement without increasing assistantship salary. Plaintiff told Nancy Oretskin that such a change was unfair—as Ph.D. students accept assistantships partly based on teaching requirements—and would create litigation exposure. Plaintiff also told Oretskin he would reveal this attempt to violate Ph.D. Program policy to the Graduate School Dean. Oretskin dismissed Plaintiff as Ph.D. Program Coordinator shortly thereafter.

e.   Daniel falsely accused Plaintiff of repeatedly bullying a colleague guilty of repeated academic integrity violations. Instead, all of Plaintiff's actions were consistent with NMSU policy. On one occasion, Daniel asked Plaintiff to follow Daniel's preferences about addressing the colleague's problematic teaching performance. However, Daniel became hostile when Plaintiff tried to honor those preferences. Daniel previously ignored Plaintiff's complaint about this colleague bullying Plaintiff's two doctoral students. Contrary to NMSU policy, Daniel has ignored several academic integrity violations by this faculty member.

f.   Daniel issued unduly negative annual evaluations of Plaintiff's performance for 2017, 2018, 2019, and 2020. Plaintiff repeatedly presented documentary evidence refuting Daniel's evaluations. For example, Plaintiff emailed a memo to Daniel documenting 17 errors in Plaintiff's 2020 annual evaluation. Daniel ignored the 16 errors in Plaintiff's favor but attended to the error that exaggerated one of Plaintiff's achievements.

g.   Daniel and Hoffman attempted to terminate Plaintiff's employment in

retaliation for all of the above-described reasons. Daniel issued a notice of

termination letter on or about 8 May 2021. The appeal hearing panelists asked

to review Daniel's effort to terminate Plaintiff's employment ruled in

Plaintiff's favor, and scolded Daniel for using NMSU policy punitively rather

than constructively. Daniel's hostility toward Plaintiff worsened after those

panelists issued their findings on 8 June 2021.

h.  All NMSU faculty members received annual written performance evaluations.

In March 2022, Plaintiff received an electronic copy of his evaluation for

2021. Like all his recent evaluations, that evaluation contained numerous

errors. Plaintiff annotated those errors, signed the evaluation form (as

required), and returned it to David Daniel. Despite Plaintiff's insistence about

including those annotations, Daniel stripped them from the document and

added a copy of the post-signature-altered evaluation form to Plaintiff's

personnel file.

i.  Millot, Castille, Daniel, and Hoffman continually violated NMSU's internal

conflict-of-interest policies by harassing Plaintiff for exercising his rights

under the above-referenced Acts.

36. The following allegations pertain to the post-settlement-agreement retaliation that

Plaintiff is experiencing at the Defendants' hands.

a.  Contrary to the settlement agreement, NMSU and David Daniel have

continued to email and harass Plaintiff about completing an online training

program. These contacts have been continuous, ongoing, and pervasive.

NMSU and Daniel have emailed Plaintiff no fewer than nine times on the

following dates—9 February, 2 March, 16 March, 30 March, 13 April, 27
April, 25 May, 8 June, and 22 June—to harass Plaintiff about this unrequired
training in retaliation for his prior legal case and settlement.

b.  Defendants have denied Plaintiff benefits he was entitled to under the
settlement agreement. For example, Defendants provided other retiring faculty
with retirement parties and recognition but failed to provide Plaintiff with
similar benefits, contrary to a settlement agreement that entitled Plaintiff to all
faculty recognition and benefits.

c.  Defendants have made derogatory statements about Plaintiff to Plaintiff's
professional colleagues, including but not limited to (i) emails to the editors of
the *Journal of Business Ethics*, where Plaintiff previously served as a section
editor, and (ii) conversations with academic colleagues, including all those
currently or previously employed by NMSU's Department of Marketing, such
as Pat Gavin, Wenkai Zhou, and many former doctoral students. Those
statements meaningfully damaged Plaintiff's professional reputation, thus
compromising his ability to collaborate on scholarly activity, earn income as a
business consultant and author, and fully launch an institute (i.e., Institute for
Marketing Futurology and Philosophy). Defendants making such derogatory
statements have violated a "material, essential, and indispensable" settlement
agreement provision.

The harassment listed above is illustrative and not exhaustive. Plaintiff reserves the right
to amend and include additional instances as he recalls or uncovers such instances through the
discovery period and up to the point that any scheduling order or other court order prohibits

amendment.

37. In addition to Plaintiff and the Defendants, the following have direct, relevant, and intimate knowledge of these issues: David Trafimow, Terry Adler, William Smith, Jeffrey Teich, David Boge, Chris Plouffe, Yangen (Cindy) You, Benjamin Widner, Yu-Feng (Winnie) Lee, Bruce Huhmann, Kevin Shanahan, Susan Steiner, Laura Castille, and Luis Colato. This list is illustrative and not comprehensive.

38. Defendant NMSU, by and through its agents and employees David Daniel and Daniel James, continues to engage in pervasive and hostile attempts to silence Plaintiff, intimidate Plaintiff, and deny Plaintiff his rights and benefits under the settlement agreement. The Defendants' post-settlement agreement conduct violated constitutionally protected rights and numerous statutory protections for whistleblowers. The Defendants' conduct violates doctrines of public policy. It was willful, wanton, or at the least in reckless disregard of Plaintiff's constitutionally protected rights under the First and Fourteenth Amendments.

39. Plaintiff requests this Court enter judgment in favor of Plaintiff and against Defendants and assess compensatory damages including but not limited to back pay, future wages, and other compensatory damages together with pre- and post-judgment interest, costs, attorneys' fees, liquidated damages, punitive damages, and such other relief as this Court may deem equitable and appropriate or allowed by law.

### COUNT VII – Violations of Plaintiff's Copyright

40. Defendants now demand that Plaintiff return all issued computers, per the settlement agreement, with stored files intact. Defendants insist these files, which include content for semester-long courses Plaintiff created, copies of legally acquired copyrighted work, Plaintiff's confidential communications with students and colleagues, student work products and other

student-related data, finished and unfinished scholarly article manuscripts and books Plaintiff

(co)authored, and proprietary data collected for scholarly research, are Defendants' property.

41. These files belong to Plaintiff under the Copyright laws of the United States found in

the United States Constitution and the Copyright Act of 1976 17 U.S. § 101 et seq. This demand,

made in retaliation for past grievances, the original lawsuit, and the settlement agreement,

contradicts the Defendants' written policies and employee training programs. Furthermore,

Plaintiff replaced the mechanical hard disk drives with faster solid-state hard drives several years

ago. Thus, the computer drives in question are Plaintiff's rather than NMSU's property. Plaintiff

properly disposed of the mechanical hard disk drives per NMSU policy.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enters judgment in favor of Plaintiff and

against Defendants as follows:

1. For compensatory damages including but not limited to back pay, future wages, and
   other compensatory damages together with pre- and post-judgment interest, costs,
   attorneys' fees, liquidated damages, punitive damages, and such other relief as this
   Court may deem equitable and appropriate or allowed by law as a result of unlawful
   gender discrimination in violation of Title VII of the Civil Rights Act of 1964.

2. For compensatory damages including but not limited to back pay, future wages, and
   other compensatory damages together with pre- and post-judgment interest, costs,
   attorneys' fees, liquidated damages, punitive damages, and such other relief as this
   Court may deem equitable and appropriate or allowed by law as a result of unlawful
   defamation in violation of NMSA 41-71-1 et seq.

3.  For compensatory damages including but not limited to back pay, future wages, and other compensatory damages together with pre- and post-judgment interest, costs, attorneys' fees, liquidated damages, punitive damages, and such other relief as this Court may deem equitable and appropriate or allowed by law as a result of unlawful violation of the Constitutionally guaranteed right to due process in violation of Fifth and Fourteenth Amendments to the United States Constitution.

4.  For compensatory damages including but not limited to back pay, future wages, and other compensatory damages together with pre- and post-judgment interest, costs, attorneys' fees, liquidated damages, punitive damages, and such other relief as this Court may deem equitable and appropriate or allowed by law as a result of unlawful interference with contract pursuant to common law.

5.  For compensatory damages including but not limited to back pay, future wages, and other compensatory damages together with pre- and post-judgment interest, costs, attorneys' fees, liquidated damages, punitive damages, and such other relief as this Court may deem equitable and appropriate or allowed by law as a result of unlawful violations of the Americans with Disability Act 42 U.S.C. § 12101.

6.  For compensatory damages including but not limited to back pay, future wages, and other compensatory damages together with pre- and post-judgment interest, costs, attorneys' fees, liquidated damages, punitive damages, and such other relief as this Court may deem equitable and appropriate or allowed by law as a result of unlawful retaliation for discrimination.

7.  For compensatory damages including but not limited to back pay, future wages, and other compensatory damages together with pre- and post-judgment interest, costs,

attorneys' fees, liquidated damages, punitive damages, and such other relief as this Court may deem equitable and appropriate or allowed by law as a result of unlawful intentional infliction of emotional distress.

8.  Plaintiff further requests the right to amend or supplement this petition, due to the ongoing nature of the dispute, through discovery and up to and including trial.

**RESPECTFULLY SUBMITTED THIS 27th Day of June, 2023**

Grant Aguirre
Attorney for the Plaintiff

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED